# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., | ) ) ) |
| Plaintiff, | ) ) No. 4:18-CV-139 RLW |
| v. | ) ) ) |
| DENISE COYNE, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff American Family Mutual Insurance Company, S.I.'s Motion for Summary Judgment (ECF No. 63). This matter is fully briefed and ready for disposition. For the reasons stated herein, the Court grants summary judgment in favor of Plaintiff American Family Insurance Company, S.I. ("American Family").

## BACKGROUND

On April 3, 2017, Aaron and Tobi Bockman (the "Bockmans") filed a lawsuit in the Circuit Court of St. Louis County, Missouri, Missouri: *Aaron Bockman, et al. v. Denise Coyne, et al.*, Cause No.: 17SL-CC01218 ("Underlying Lawsuit"). (Plaintiff American Family Mutual Insurance Company, S.I.'s Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 65, ¶ 1). In the Underlying Lawsuit, the Bockmans allege Denise Coyne ("Coyne") listed her home located at 376 South Gore Avenue, Webster Groves, Missouri (the "Property") in 2014. (PSUMF, ¶ 4). The Bockmans alleged the MLS listing, Coyne, and her broker all represented that the Property had a "2 car garage." (PSUMF, ¶ 5). The Bockmans entered into a Residential Sale Contract ("RSC") for the purchase of the Property on January 15, 2015. (PSUMF, ¶ 6). As part of the RSC, Coyne executed a disclosure statement, stating that she disclosed to the

Bockmans "all conditions which might lower the value of the [P]roperty being sold or adversely affect the [Bockmans'] decision to buy the Property." (PSUMF, ¶ 8). After purchasing the Property, the Bockmans learned that they could not fit their two vehicles in the attached garage. (PSUMF, ¶ 9). The Bockmans alleged that "substantial remediation is necessary to cure the defects of the Property by expanding the depth of the garage to fit two cars within it." (PSUMF, ¶ 11).

The Bockmans' First Amended Petition ("FAP") in the Underlying Lawsuit alleges five counts, with three counts directed against Coyne. (PSUMF, ¶ 12). The Bockmans allege a claim in Count I for Violation of the Missouri Merchandising Practices Act ("MMPA"). (PSUMF, ¶ 13). In Count I, the Bockmans allege that Coyne employed unfair, deceptive, and unconscionable methods, acts or practices of fraud, misrepresentation, concealment, and/or suppressed or omitted material fact in connection with the Bockmans' purchase of the Property, including falsely representing that the Property had an attached two-car garage. (PSUMF, ¶ 14). Count II is a claim for fraudulent misrepresentation against Coyne. (PSUMF, ¶ 16). Therein, the Bockmans allege that Coyne falsely represented to them that the Property had an attached two-car garage. (PSUMF, ¶ 17). The Bockmans allege that the false representations were material to the Bockmans' purchase of the Property and Coyne knew the representations were false. (PSUMF, ¶ 18). The Bockmans specifically allege in Count II that Coyne "made these representations with the intention that they would cause [the Bockmans] to make a higher offer on the Property." (PSUMF, ¶ 19). The Bockmans allege in Count III for Negligent Misrepresentation that Coyne failed to inform the Bockmans of the problems relating to the depth of the attached garage and failed to disclose the material defect of the depth of the garage. (PSUMF, ¶¶ 21-22). The Bockmans claim that, due to their justified reliance on Coyne's

misrepresentations, they have lost the use of the garage and will suffer pecuniary losses. (PSUMF, ¶¶ 23-24).

At issue in the instant case are several policies issued by American Family to Coyne. American Family issued a homeowners policy of insurance to Coyne, policy number 24-B26667-091 ("Homeowners Policy"), which was in effect from September 14, 2014 to September 14, 2015.  (PSUMF, ¶ 25). American Family also issued a personal liability umbrella policy of insurance to Coyne, policy number 24-UC0543-01 ("Umbrella Policy"), which was in effect from July 1, 2014 to July 1, 2015.  (PSUMF, ¶ 65).

American Family filed this declaratory judgment action against the Bockmans and Coyne, seeking the Court's declaration that there is no insurance coverage afforded under the Homeowners Policy and Umbrella Policy issued to Coyne. American Family also claims that it owes no duty to either defend or indemnify Coyne as to the claims made against her in the Underlying Lawsuit.  American Family argues that there was no coverage under either policy related to the sale of the Property and Coyne's alleged misrepresentations that the home had a two-car garage.  On May 3, 2022, the Bockmans filed their First Amended Counterclaim ("FAC") against American Family in this action.  (PSUMF, ¶ 29).  The Bockmans' FAC includes claims for Bad Faith Failure to Settle (Count I), Breach of Fiduciary Duty (Count II), and Equitable Garnishment (Count III). (PSUMF, ¶ 29-36).

## DISCUSSION

### I. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

**II.    Occurrence**

"The interpretation of an insurance policy is a question of law." *Hartford Ins. Co. of the Midwest v.* 1033, 1038 (E.D. Mo. 2005) (citing *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liability Ins. Co.,* 989 S.W.2d 168, 171 (Mo. 1999)). "An insurance company has a duty to defend whenever the insured is exposed to potential liability, 'no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable.'" *Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F. Supp. 2d 1033, 1037-38 (E.D. Mo. 2005)

(citing *Truck Ins. Exchange v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) (quoting John Alan Appleman, 7C Insurance Law and Practice § 4684.01 (Walter F. Berdal, ed.1979)). "The duty to defend is determined by comparing the language of the coverage afforded in the policy with the allegations in the pleadings." *Wyllie*, 396 F. Supp. 2d at 1038 (citing *McCormack,* 989 S.W.2d at 170).

The Bockmans contend that the FAP alleges an "occurrence" under the Policies. Both the Homeowners Policy and Umbrella Policy issued by American Family to Coyne define "occurrence" as an "accident" which results in personal injury or property damage. (PSUMF, ¶¶ 26, 28). The Bockmans note that the FAP "alleged that Coyne made negligent misrepresentations during the sale of her home to the Bockmans that resulted in inducting the Bockmans to purchase a property that they otherwise would not have (a home with a 'no-car garage' rather than a 'two-car garage'), and resulted in the Bockmans' loss of use of that property." (ECF No. 74 at 2). The Bockmans further claim that the allegations in the FAP sufficiently establish the "potential" for a covered "occurrence" with resultant "property damage" under the defined terms of the Policies so as to establish American Family's duty to defend Coyne in the Underlying Lawsuit. (ECF No. 74 at 2). The Bockmans note that the FAP alleges that Coyne negligently failed to "exercise reasonable care or competence" when making, or failing to make, certain representations about the home having a two-car garage in connection with her sale of the Property to the Bockmans. (PSUMF, ¶¶ 41-46). Thus, the Bockmans claim that this allegation stated a claim potentially within the Policy's coverage and triggered a duty to defend. (ECF No. 74 at 7 (citing *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 46 (Mo. Ct. App. 1998)).

Essentially, American Family argues that the Bockmans' allegations do not sound in negligence (even Count III for negligent misrepresentation) because all of the counts "incorporate by reference all of the common fact allegations and MMPA allegations in Count I, which … include intentional, non-accidental conduct, and for those reasons alone they have failed to allege an 'accident' based 'occurrence.'" (ECF No. 87 at 4).[1] American Family further asserts that the allegations in Count III for "Negligent Misrepresentation" "are not truly couched in negligence, but instead allege intentional conduct related to misrepresenting the Property's condition." (ECF No. 87 at 4 (citing FAP, ¶ 41 (Coyne "failed to inform Plaintiff of problems related to the depth of the garage" and "failed to disclose the material defect of the depth of the garage"), FAP, ¶ 42 (Coyne "omitted the foregoing information in its statement to [the Bockmans] in an effort to convince [the Bockmans] to purchase the Property")).

The Bockmans "may be correct that a negligent misrepresentation claim qualifies as an 'occurrence.'" *See St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002) (citing *Wood v. Safeco Ins. Co.,* 980 S.W.2d 43, 52 (Mo. Ct. App. 1998)).[2] However, the Court need not decide that issue because the Bockmans' FAP did not clearly allege "property

---

[1] In Count I under the MMPA of the Underlying FAP, the Bockmans allege that Coyne's actions were "intentional, willful, outrageous and in reckless disregard for the consequences that would result[.]"  (PSUMF, ¶ 15 (citing FAP, ¶ 27).  Likewise, in Count II for Fraudulent Misrepresentation, the Bockmans incorporated the restated their allegations in paragraphs 1 through 28 of the FAP.  (ECF No. 65-2 at 6).  Finally, in Count III for Negligent Misrepresentation, the Bockmans also incorporated and reinstated their allegations in paragraphs 1 through 38.  (ECF No. 65-2 at 8).

[2] In *Wood v. Safeco Insurance Company of America*, 980 S.W.2d 43 (Mo. App. E.D. 1998), the Eastern District of this court held, "Missouri authority ... allow[s] negligent conduct to be encompassed by a liability policy providing coverage for an 'occurrence' defined as an 'accident' [as t]his comports with a reasonable person's expectation of liability coverage."  The Eastern District concluded that a liability policy restricting coverage to an "occurrence," defined as an "accident," encompasses negligence claims, generally, and negligent misrepresentation claims specifically. *See also Am. Fam. Mut. Ins. Co. v. Sharon*, 596 S.W.3d 135, 144 (Mo. Ct. App. 2020) (holding that "a negligent misrepresentation can be an 'accident,' thus satisfying part of the definition of an 'occurrence.'").

damage" under the Policies. Therefore, the Court leaves open whether the Bockmans have alleged an occurrence and instead grants summary judgment because the FAP does not allege property damage under the Policies as a matter of law.

### III. Property Damage

The language of both Policies requires that the occurrence had to have resulted in "property damage" as defined by the Policies to trigger the duty to defend. *See* ECF No. 74 at 8 . The Homeowners Policy defines "property damage" as "[p]hysical damage to or destruction of tangible property, including the loss of use of this property." (PSUMF, ¶ 26). The Umbrella Policy defines "property damage" as:

> a. Physical harm to tangible property, including all resulting loss of use of that property; or
> b. Loss of use of tangible property that is not physically injured.
> Property damages that is loss of use of tangible property that is not physically injured will be deemed to occur at the same time of the occurrence that caused it.

(PSUMF, ¶ 28). The Bockmans argue that the FAP alleged that Coyne's misrepresentations and the resulting property damage, including loss of use, meet this threshold for property damage and establish that American Family owed a duty to defend. (ECF No. 74 at 8). The Bockmans seemingly admit that there has not been a physical harm to tangible property (ECF No. 74 at 11), but focus their arguments on the claim that they experienced a "loss of use" of the two-car garage because it does not accommodate their vehicles.

The Bockmans argue that "property damage" under the Umbrella Policy explicitly includes a claim of "loss of use of tangible property that is not physically injured" as a covered loss. (ECF No. 74 at 10). The provision goes on to state that "[p]roperty damage that is loss of use of tangible property that is not physically injured will be deemed to occur at the same time of the occurrence that caused it." The Bockmans claim that this "more expansive definition of

'property damage' makes this case completely distinguishable from every case" cited by American Family. (ECF No. 74 at 11). The Bockmans argue that the property damage requirement is met because the "occurrence" alleged in the FAP is the misrepresentation itself. (ECF No. 74 at 10). The Bockmans contend that their loss of use claim flows from Coyne's misrepresentation, *i.e.*, "if Coyne had not created the expectation that the attached garage was a two-car garage, the Bockmans would not have suffered this loss of use." (ECF No. 74 at 10). Accordingly, the Bockmans assert that their "loss of use claim occurred at the same time [as] the occurrence that caused it—at the time they were induced to purchase the property based on Coyne's alleged misrepresentation." (ECF No. 74 at 10).

In addition, the Bockmans claim that the definition of "property damage" in the Homeowners Policy potentially provides coverage, triggering American Family's duty to defend. (ECF No. 74 at 11). The Bockmans contend the FAP alleged that they "would not have purchased the property if they had not been made to believe that the property had an attached two-car garage, which they considered to be a necessary feature." (ECF No. 74 at 12). The Bockmans claim this case is analogous to the *Wood* and *Spencer* cases, which analyzed similar definitions of "property damage" as the Homeowner Policy. In *Spencer*, the District Court denied summary judgment to American Family where the underlying petition alleged: "Subsequent to closing the purchase of the Property, Plaintiff discovered that every time it rains, water leaks and seeps into the basement of the home and that modifications, renovations, and or alterations were made to the basement of said property in an attempt to conceal any evidence of dampness, water accumulation, leakage, mold or cracks in the foundation of the basement." *Am. Fam. Mut. Ins. Co. v. Spencer*, No. 4:17CV1478 JCH, 2018 WL 1378640, at *6 (E.D. Mo. Mar. 19, 2018). The Court held that the underlying petition "alleges that misrepresentations made by

Spencer while Spencer owned the property resulted in damages to Volz subsequent to the sale of the property." *Id*. The Bockmans further try to align their case with *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43 (Mo. Ct. App. 1998), where the Missouri Court of Appeals held that "allegations of the petitions regarding the three to four feet of flood water within the residence and riding arena sufficiently implicate the 'loss of use' provision of the policy's definition of 'property damage.'" *Id*. at 53.

Contrary to the Bockmans' arguments, the Court holds that the FAP does not allege "property damage" as defined under either the Homeowners Policy of the Umbrella Policy. That is, the purported damage to the garage does not constitute "property damage" because it predated the Bockmans' purchase of the house and was not caused by the alleged occurrence. The Court finds this action analogous to *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703 (8th Cir. 2002).[3] In that case, St. Paul brought a declaratory judgment action against the Lippincotts seeking a judicial determination as to whether the basic insurance policy and a personal umbrella policy covered the judgment against the Lippincotts in the underlying suit. In the underlying suit, Steve and Bonnie Thompson, the buyers, sued Charles and Barbara Lippincott, the sellers and the insureds, for fraud and rescission, alleging the Lippincotts intentionally and negligently concealed structural damage to a house they sold to the Thompsons. In *Lippincott*, the Eighth Circuit affirmed the district court's grant of summary judgment in favor of St. Paul, finding there was not "property damage" under the policies:

> The Lippincotts' negligent misrepresentations did not cause any property damage to the house. Neither did the Lippincotts' actions to conceal the cracks in the

---

[3] "The primary insurance policy defined 'property damage' as 'damage to someone else's property or its loss or destruction and the loss of its use.' The umbrella policy defined 'property damage' as damage to 'tangible property or its loss or destruction' and "'the loss of its use.'" *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002).

> house cause any property damage to the house. The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the Lippincotts incurred liability. The Thompsons' judgment covered the intangible losses incurred when the Thompsons relied to their economic detriment upon the Lippincotts' misrepresentations. These damages are pecuniary in nature and are not property damage within the meaning of the St. Paul insurance policies.

*St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002); *Sharon*, 596 S.W.3d at 146 (citing *Lippincott*, 287 F.3d at 706) ("[U]ndiscovered defects that exist at the time of the sale are not caused by the misrepresentation."). [4]

Similarly, the Court holds that the Bockmans cannot establish property damage as a matter of law because the defects predate the misrepresentation that is the basis of the Bockmans' claims. *Id.* The Court holds that the Bockmans' alleged loss of use of their two-car garage cannot constitute property damage under either policy as a matter of law because the Bockmans cannot establish that the property damage was caused by the alleged occurrence. *Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487, 490 (8th Cir. 2013) ("Even if the misrepresentation was a covered occurrence, however, the policy provides coverage only for property damage *caused* by the occurrence."). Here, the Umbrella Policy requires that the property damage had to be caused by the occurrence: "Property damages that is loss of use of tangible property that is not physically injured will be deemed to occur at the same time of the occurrence that caused it." Just as in *Lippincott* and *Payne,* the Bockmans' misrepresentations, omissions, and concealments "did not cause any property damage to the house.... The [alleged] structural flaws in the house [may] constitute tangible property damage, but these flaws predate the occurrence of

---

[4] The Bockmans attempt to distinguish *Lippincott* because the Court addressed the insurer's duty to indemnify and not the broader duty to defend and because loss of the use of property was not alleged, only pre-existing structural damage. (ECF No. 74 at 13). The Court, however, finds this to be a distinction without a difference because *Lippincott* addresses the same definition of property damage as in in the instant case.

concealments and misrepresentations by which the [Bockmans] incurred liability." *Lippincott*, 287 F.3d. at 706; *Payne v. Grinnell Mut. Reinsurance Co*., 716 F.3d 487, 490 (8th Cir. 2013). While the underlying "judgment covered the intangible losses incurred when the [Bockmans] relied to their economic detriment upon [Coyne's] misrepresentations," there is no applicable coverage from the American Family policies in the absence of property damage caused by the asserted occurrence. *Lippincott*, 287 F.3d. at 706; *see also Payne*, 716 F.3d at 490 ("Even if the misrepresentation was a covered occurrence, however, the policy provides coverage only for property damage *caused* by the occurrence.").[5] The Bockmans have not demonstrated any objective or legal criteria for the Court to find that the "loss of use" of their garage was caused by the alleged misrepresentation. Rather, the Bockmans have merely asserted that they subjectively experienced a diminution in value of their property because they are unable to fit their particular vehicles into the garage. The Bockmans cannot show that the representations caused the garage to decrease in size or experience any other physical change, in contrast to the obvious water damage in *Am. Fam. Mut. Ins. Co. v. Spencer*, No. 4:17CV1478 JCH, 2018 WL 1378640, at *6 (E.D. Mo. Mar. 19, 2018) and *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43 (Mo. Ct. App. 1998).

Likewise, the Bockmans cannot establish property damage under the Homeowners Policy because there is no physical damage. As stated, the Homeowners Policy defines "property damage" as "[p]hysical damage to or destruction of tangible property, including the loss of use of this property." (PSUMF, ¶ 26). The Bockmans contend that their Property sustained damage similar to the flooding and water damage in *Wood* and *Spencer*. The Bockmans argue that the

---

[5] The Bockmans attempt to distinguish *Payne* because "it involved preexisting damages to the home, not loss of use of property, and the court was determining whether there was a duty to indemnify, not simply where a duty to defend existed." (ECF No. 74 at 13 (citing *Payne*, 716 F.3d at 488-89)).

FAP "alleges that they would not have purchased the [P]roperty if they had not been made to believe that the [P]roperty had an attached two-car garage, which they considered to be a necessary feature." (ECF No. 74 at 12). The Court holds that the Bockmans cannot demonstrate any physical injury to their garage or Property, which would be covered under the Homeowners Policy. The garage and Property are in the same condition as they was prior to their purchase. The only damage was to the Bockmans' personal expectations.

Finally, the Court holds that the Bockmans' FAP did not establish "loss of use" and, therefore, property damage under the Umbrella Policy, as a matter of law. The Bockmans focus their brief on subjective loss of use of the garage to store their two particular vehicles. The "loss of use" in the American Family Umbrella Policy, however, does not identify what use is required for a finding of property damage. Here, American Family presented evidence that the garage could fit two smaller vehicles. *See* ECF No. 87 at 8. Likewise, the Bockmans could have used the garage for storage or other uses. The garage was in the same, usable state before and after the sale, unchanged in dimensions or condition. The Court finds this case distinguishable from other cases where the condition of the garage differed from its represented state and the unusable condition later discovered after the sale. *See Spencer*, 2018 WL 1378640, at *6 (water seepage) and *Wood*, 980 S.W.2d 43 (flood water within residence).

Based upon all of the foregoing reasons, the Court finds no coverage for the Bockmans' claims against Coyne under either Policy as a matter of law. The Court grants summary judgment in favor of American Family because the Bockmans cannot demonstrate property damage as a matter of law or that property damage was caused by an occurrence.

### IV. Ripeness

The Bockmans argue that, in the event that this Court does not conclude that American Family owed Coyne a duty to defend in the Underlying Lawsuit, "the interests of justice required that the Bockmans be permitted time to conduct certain necessary discovery in this matter and provide supplemental briefing to the Court concerning the applicable reservation of rights letter." (ECF No. 74 at 14). The Bockmans argue that a reservation of rights letter is a "critical piece of evidence, both for the Bockmans to defend against" American Family's "declaratory judgment action, and to prosecute their Counterclaim." (ECF No. 74 at 15). The Bockmans request that the Court "briefly stay this Motion to allow the Bockmans time to conduct necessary discovery related to the instant Motion, and provide supplemental briefing." (ECF No. 74 at 15).

Although the Bockmans have not invoked it, Rule 56(d) provides the framework for this determination whether to allow discovery and stay the litigation. Under Rule 56(d), a court may defer considering a summary judgment motion or allow time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The party seeking additional discovery must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (citing *State of Cal., on Behalf of Cal. Dep't of Toxic Subs. Control v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998); *Chambers v. Travelers Cos., Inc.,* 668 F.3d 559, 568 (8th Cir. 2012)). However, Rule 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment." *United States ex rel. Small Bus. Admin. v. Light,* 766 F.2d 394, 397 (8th Cir. 1985) (per curiam). Thus district courts possess

"wide discretion in denying" Rule 56(d) motions. *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014).

Here, the Court finds unavailing the Bockmans' argument that they require additional discovery. First, the Bockmans have not provided an affidavit identifying the specific purpose for which the discovery would be used. *See* Fed. R. Civ. P. 56(d). Instead, the Bockmans merely assert that the reservation of rights letter is a "critical piece of evidence," but fail to demonstrate how the letter will assist in defending against American Family's Motion for Summary Judgment or prosecuting the Bockman's Counterclaim. That is to say, the Bockmans "cannot state with specificity what evidence further discovery would uncover" and how such evidence would advance their position. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 837 (8th Cir. 2015). The Bockmans' "unspecific assertion" that the reservation of rights letter is a critical piece of evidence is "insufficient under Rule 56(d)." *Anzaldua*, 793 F.3d at 837 (citing *Duffy v. Wolle,* 123 F.3d 1026, 1041 (8th Cir. 1997)). The Court holds that the Bockmans "did not meet [their] burden of showing how postponement of a ruling on the motion would have enabled [them] to rebut the showing of the absence of a genuine issue of material fact." *U.S. Through Small Bus. Admin. v. Light*, 766 F.2d 394, 398 (8th Cir. 1985)

Further, although this Motion for Summary Judgment has been pending for a couple of months, the Bockmans have not provided the Court with any information that they have attempted to obtain discovery regarding this "critical piece of evidence."

The Court utilizes its wide discretion and denies the Bockmans' request for the Court to postpone ruling on American Family's Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff American Family Mutual Insurance Company, S.I.'s Motion for Summary Judgment (ECF No. 63) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants/Counterclaim Plaintiffs Aaron and Tobi Bockmans' First Amended Counterclaims against Plaintiff/Counterclaim Defendant American Family Mutual Insurance Company, S.I. (ECF No. 61) is **DISMISSED** with prejudice.

An appropriate Judgment is filed herewith.

Dated this 12th day of October, 2022.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**